# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| J. PETER DUNSTON, | )<br>)<br>) |
| Plaintiff, | )<br>) No. 07 CV 5113 |
| v. | )<br>) Judge Joan H. Lefkow |
| R.H. LOVE GALLERIES, INC.;<br>RICHARD H. LOVE, an individual;<br>and TOM HOSIER, an individual, | )<br>)<br>)<br>) |
| Defendants. | )<br>) |

## MEMORANDUM OPINION AND ORDER

Plaintiff J. Peter Dunston ("Dunston"), filed a fifteen-count complaint against defendants R.H. Love Galleries, Inc. ("Love Galleries"), Richard H. Love ("Love"), and Tom Hosier ("Hosier") (collectively "defendants"), alleging violations of the Racketeer Influenced and Corrupt Organization Act ("RICO"), 18 U.S.C. §1962, and the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1, *et seq.*, as well as claims for common law fraud and conversion. Pursuant to an arbitration agreement executed between Dunston and Love Galleries, defendants filed a motion to stay the instant litigation pending completion of the arbitration proceeding. For the reasons set forth below, the defendants' motion to stay the proceedings pending arbitration [#16] is granted.

## FACTUAL BACKGROUND

According to the complaint, Dunston entered into a consignment agreement with Love Galleries, whereby Love Galleries agreed to sell a painting (entitled *Path Through the Olive*

*Trees* by William Chadwick) on consignment for $40,000. Dunston was to receive 75% percent of the final sale price, and the agreement included an arbitration clause.

Pursuant to the consignment agreement, Dunston sent the painting to Love Galleries on May 10, 2005. Between May 10, 2005 and January 2007, Dunston contacted the defendants once each quarter to determine the status of the painting and was told the painting was on display but had not attracted any buyers. In approximately May 2007, Dunston again contacted the defendants and demanded the return of the painting. At this time, the defendants informed Dunston that the painting was on loan to a potential buyer.

On or around May 31, 2007, Love told Dunston the painting had been sold. Although Dunston contacted the defendants to collect the proceeds from the sale, the defendants have delivered neither the funds from the sale nor the painting itself.

## DISCUSSION

### I. Applicable Law

Pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, and the Supremacy Clause, U.S. Const. art. VI, cl. 2, federal law generally controls questions of arbitrability. *ChampionsWorld, LLC* v. *U.S. Soccer Fed'n, Inc.*, 487 F. Supp. 2d 980, 985 (N.D. Ill. 2007) (citing *Moses H. Cone Mem'l Hosp.* v. *Mercury Construction Corp.*, 460 U.S. 1, 24, 103 S. Ct. 927, 74 L. Ed. 2d 765 (1983)). The central purpose of the FAA is to "ensure that private agreements to arbitrate are enforced according to their terms." *Mastrobuono* v. *Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 53–54, 115 S. Ct. 1212, 131 L. Ed. 2d 76 (1995) (internal quotation marks and citations omitted). Under the FAA, arbitration is favored "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that

covers the asserted dispute." *S+L+H S.p.A.* v. *Miller-St. Nazianz, Inc.*, 988 F.2d 1518, 1524 (7th Cir. 1993) (quoting *Int'l Ass'n of Machinists v. Fansteel, Inc.*, 900 F.2d 1005, 1010 (7th Cir. 1990)). Also, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Mastrobuono*, 514 U.S. at 62 n. 8 (quoting *Moses H. Cone Mem'l*, 460 U.S. at 24–25). The party opposing arbitration bears the burden of establishing why the arbitration clause should not be enforced. *See Shearson/Am. Express* v. *McMahon*, 482 U.S. 220, 225–26, 107 S. Ct. 2332, 96 L. Ed. 2d 185 (1987).

The FAA provides that a motion to stay must be granted where a parties' claims are within the scope of an applicable arbitration agreement.[1] 9 U.S.C. § 3; *see also Sharif* v. *Wellness Int'l Network, Ltd.*, 376 F.3d 720, 726 (7th Cir. 2004). A district court "must grant the requested stay where two conditions are satisfied: (1) the issue is one which is referable to arbitration under an agreement in writing for such arbitration, and (2) the party applying for the stay is not in default in proceeding with such arbitration." *Sims* v. *Montell Chrysler, Inc.*, 317 F. Supp. 2d 838, 840 (N.D. Ill. 2004) (quoting *C. Itoh & Co. (Am.) Inc.* v. *The Jordan Int'l Co.*, 552 F.2d 1228, 1231 (7th Cir. 1977)).

## II. Analysis

The consignment agreement between the parties includes an arbitration clause which provides, "Any dispute or controversy arising under, out of, or in connection with, or in relation

---

[1] Section 3 of the FAA provides in relevant part: "If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court . . . shall . . . stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration." 9 U.S.C. § 3.

3

to this Agreement shall be resolved and determined by arbitration in the City of Chicago, pursuant to the rule then obtaining of the American Arbitration Association." Pl.'s Compl., Ex. B, at 2.

The parties do not dispute the validity or applicability of the arbitration clause;[2] rather, the parties disagree as to the binding nature of any arbitration award rendered pursuant to the clause. The dispute arises from a disagreement over language used in a proposed agreed order. After defendants filed this motion to stay, the parties discussed an agreed stipulation to the stay. Defendants' counsel prepared an agreement to stay, and Dunston's counsel added the following sentence to the agreement: "Further, plaintiff's agreement to allow the arbitration is premised on the representation of the defendants' counsel that all Defendants will agree to participate in, and be bound by, the arbitration." Reply at 2. Defendants took issue with the phrase "and be bound by," and the parties stopped their discussions regarding the agreed order and resumed litigating this motion stay.

As a result, Dunston urges the court either to find that a future arbitral award would be binding, or, if the court finds such an award would not be binding, to deny the motion to stay.

---

[2] Although Dunston disputes the applicability of the arbitration clause to the various causes of action, Dunston has tentatively agreed to allow arbitrators to decide the issue. Pl.'s Resp. at 3. Whether the parties have submitted a particular dispute to arbitration, however, is an issue for the court to decide unless there is "clear and unmistakable" evidence that the parties submitted the issue of arbitrability to arbitration. *First Options of Chi., Inc.* v. *Kaplan*, 514 U.S. 938, 944, 115 S. Ct. 1920, 131 L. Ed. 2d 985 (1995) (citations omitted). Here the language of the arbitration clause provides that "[a]ny dispute or controversy arising under, out of, or in connection with, or in relation to this Agreement" is to be decided by arbitration. Pl.'s Compl., Ex. B, at 2. The scope of this language is sufficiently broad to encompass all of Dunston's claims. *See Sweet Dreams Unlimited, Inc.* v. *Dial-A-Mattress Int'l, Ltd.*, 1 F.3d 639, 642 (7th Cir. 1993) (finding that the term "'arising *out of*' reaches all disputes having their origin or genesis in the contract, whether or not they implicate interpretation or performance of the contract per se").

Defendants agree that an arbitral award would be binding but state they objected to the clause "and be bound by" because they wish to maintain their rights to petition the Court if the arbitration award is defective.

Arbitration agreements are enforceable to the same extent as other contracts, and are enforced according to their terms. *Volt Info. Scis., Inc.* v. *Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 478, 109 S. Ct. 1248, 103 L. Ed. 2d 488 (1989); *Sphere Drake Ins. Ltd.* v. *All Am. Life Ins. Co.*, 307 F.3d 617, 620 (7th Cir. 2002). Where parties include an arbitral clause in a contract, the parties agree to be bound by the arbitrators' interpretation of the contract. *Hill* v. *Norfolk & W. Ry. Co.*, 814 F.2d 1192, 1195 (7th Cir. 1987). Additionally, where the parties agree to arbitration pursuant to the rules of the American Arbitration Association ("AAA"), the parties incorporate the AAA's rules into the arbitration agreement. *Commonwealth Edison Co.* v. *Gulf Oil Corp.*, 541 F.2d 1263, 1272 (7th Cir. 1976). Arbitration is binding where rules chosen by the parties call for binding arbitration. *McKee* v. *Home Buyers Warranty Corp. II*, 45 F.3d 981, 984 (5th Cir. 1995) (holding arbitration binding where warranty agreement incorporated AAA rules); *Rainwater* v. *Nat'l Home Ins. Co.*, 944 F.2d 190, 193 (4th Cir. 1991) (finding an arbitration under the AAA rules is binding); *Commonwealth Edison*, 541 F.2d at 1273 (holding parties consented to binding arbitration where AAA rules governed).

In this case, the parties agreed to arbitrate their claims "pursuant to the rule then obtaining of the American Arbitration Association" and thus effectively incorporated the AAA rules into their arbitration agreement. *See Commonwealth Edison*, 541 F.2d at 1272. The AAA's rules governing commercial arbitration provide, "Parties to an arbitration under these rules shall be deemed to have consented that judgment upon the arbitration award may be

entered in any federal or state court having jurisdiction thereof." AAA, Commercial Arbitration Rules and Mediation Procedures, R-48(c) (effective Sept. 1, 2007). Thus, the arbitrators' decision in this case would bind the parties. *See Commonwealth Edison*, 541 F.2d at 1273 (interpreting virtually identical language in Rule 46(c) of the 1973 version of the AAA rules as binding).

In the court's view, defendants do not dispute the binding nature of the possible award. Rather, defendants seek to preserve their statutory rights under the FAA. The FAA provides that a district court may vacate an award under four circumstances:

> In any of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration—
> (1) where the award was procured by corruption, fraud, or undue means;
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. §10(a). The fact that the FAA provides grounds upon which to vacate an award, however, does not render the award non-binding.[3] *See IDS Life Ins. Co.* v. *Royal Alliance Assocs., Inc.*, 266 F.3d 645, 649 (7th Cir. 2001) ("[T]he grounds for challenging an arbitration award are narrowly limited, reflecting the voluntary contractual nature of commercial arbitration. Within exceedingly broad limits, the parties to an arbitration agreement choose their method of

---

[3] It would be inappropriate and premature for the court to determine at this time whether any of the conditions of section 10(a) are met; "[t]he time to challenge an arbitration, on whatever grounds . . . is when the arbitration is completed and an award rendered." *Smith* v. *Am. Arbitration Ass'n, Inc.*, 233 F.3d 502, 506 (7th Cir. 2000).

dispute resolution and are bound by it however bad their choice appears to be either *ex ante* or *ex post*."); *see also Moseley, Hallgarten, Estabrook & Weeden, Inc.* v. *Ellis*, 849 F.2d 264, 267 (7th Cir. 1988) (noting that judicial review of arbitral awards is "extremely limited").

Dunston argues that the motion to stay should be denied only if the court finds that an arbitral award would be non-binding. Because the law provides that such an award would effectively be binding, the parties appear to be in agreement. In any event, moreover, Dunston—the party opposing arbitration—has not met his burden of establishing why the arbitration clause should not be enforced. Defendants' motion to stay pending arbitration must therefore be granted.

## CONCLUSION AND ORDER

For the foregoing reasons, defendants' motion to stay the proceedings pending arbitration [#16] is granted.

Dated: June 4, 2008     Enter:_____
                              JOAN HUMPHREY LEFKOW
                              United States District Judge